1

2

3

4        UNITED STATES DISTRICT COURT

5        NORTHERN DISTRICT OF CALIFORNIA

6

7    KAREEM J. HOWELL,                     Case No. 15-cv-05377-SI

         Plaintiff,

8

         v.                               **ORDER OF DISMISSAL WITH LEAVE**
9                                         **TO AMEND**

10   C. TRAN, et al.,                     Re: Dkt. No. 8

         Defendants.

11

12

13                            **BACKGROUND**

14       Kareem Howell, a prisoner currently at the California Health Care Facility in Stockton,

15   filed a *pro se* civil rights action under 42 U.S.C. § 1983 complaining of conditions of confinement

16   at the Santa Clara County Jail.  He filed a complaint, and later filed an amended complaint.  The

17   amended complaint supersedes the earlier pleading and is now before the court for review under

18   28 U.S.C. § 1915A.

19

20                            **BACKGROUND**

21       Howell is a California prisoner who was housed temporarily in the Santa Clara County Jail

22   on and after July 16, 2015.  *See* Docket No. 1 at 3.  In his amended complaint, Howell alleges the

23   following:

24       On July 26, 2015, Howell "served legal notice" to correctional county sheriff Smith and

25   correctional captain Hoyt "informing them both of his immediate situation" and of his "illegal

26   housing unit," yet they failed to correct it.  Docket No. 8 at 4.  The amended complaint does not

27   describe what made Howell's housing unit illegal, or what other "immediate situation" existed.

28

United States District Court
Northern District of California

On September 1, 2015, Howell experienced suicidal ideations, which he attributes to "being illegally housed in a segregation (SHU) housing unit." *Id.* at 3. C/O Mahaffey "failed to recognize" Howell's mental condition and, "without warning," opened the cell food port and sprayed Howell "with his chemical agent." *Id.* C/O Mahaffey then ordered Howell to submit to handcuffs and exit the cell. When Howell did so, he was roughly "grabbed by several correctional officers and someone physically punched the plaintiff into his right eye breaking his eye glasses as well." *Id.* Howell filed an inmate grievance about the event the next day.

On September 14, 2015, C/O Tran refused to feed Howell his breakfast or took away the breakfast. *Id.* at 1-2. When Howell questioned him, C/O Tran made unspecified verbal threats. C/O Tran placed construction tape around Howell's "living crisis cell door" to silence Howell and put a white sheet over the cell windows to prevent Howell from seeing out and the unit nurse from seeing into the cell. C/O Tran did this to incite or provoke the "mentally challenged inmate" into acting violently against himself or others, and caused Howell to become manic, which triggered a "psychotic reaction episode." *Id.* at 2. Howell filed an inmate grievance the next day.

## DISCUSSION

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b)(1),(2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

United States District Court
Northern District of California

Deliberate indifference to a prisoner's serious medical needs amounts to the cruel and unusual punishment prohibited by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The requirements for mental health care are the same as those for physical health care needs. *See Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). For the objective prong of the deliberate indifference test in a medical care claim, the plaintiff "must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citation and internal quotation marks omitted). For the subjective, or "deliberate indifference" prong, the plaintiff must show that the prison official knew of and disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Excessive force also may amount to the cruel and unusual punishment prohibited by the Eighth Amendment. Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 317 (1986)). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7

The amended complaint has several problems which make it necessary for Howell to file a second amended complaint. First, the amended complaint does not state a claim based on the events of July 26, 2015. Howell alleges that he notified defendants Smith and Hoyt of an "illegal"

United States District Court
Northern District of California

1   housing situation and/or some other "immediate situation" but does not allege what that situation

2   was.  Without knowing the nature of the situation to which Howell was subjected, or why the

3   defendants were supposed to do something about it, the court cannot determine whether there was

4   a violation of Howell's constitutional rights.  In his second amended complaint, Howell must

5   describe the situation, explain what he told the defendants (and how he did so), and describe their

6   response (or lack of response) to his notice.  Some of Howell's allegations suggest that he believes

7   that, due to his mental health needs, he could not be put in restrictive housing or subject to any

8   routine custody rules, but that is not the law.  There is no categorical rule that mentally ill inmates

9   do not have to comply with prison and jail rules, or that mentally ill inmates may not be put in

10  restrictive housing.

11       Second, the amended complaint does not state a claim against C/O Mahaffey for deliberate

12  indifference to Howell's mental health needs on September 1, 2015.  Howell alleges that Mahaffey

13  "failed to recognize" that Howell was having a "psychotic reaction episode."  Docket No. 8 at 3.

14  A correctional officer who is unaware of a medical or mental health need cannot be said to have

15  known of and disregarded an excessive risk to the inmate's medical or mental health need, as

16  required by *Farmer*.  C/O Mahaffey would not have acted with the requisite deliberate indiff-

17  erence if he was unaware of the mental health need.

18       Howell's amended complaint also does not provide enough information to state a plausible

19  claim against Mahaffey for the use of excessive force on him on September 1, 2015.  The

20  amended complaint suggests that Howell was doing something that the correctional officer did not

21  recognize as a mental health problem, and that something was what led Mahaffey to use a

22  chemical spray on Howell.  Howell needs to explain in his second amended complaint what he

23  was doing in the cell when Mahaffey sprayed him so that the court can determine whether there is

24  a cognizable excessive force claim.  For example, pepper-spraying an inmate sitting quietly on his

25  bunk might be excessive force while pepper-spraying an inmate to stop the inmate engaged in self-

26  harm might not be excessive force.

27       Howell's amended complaint also has too few details for the court to determine whether a

28  claim is stated for the events on September 15, 2015.  The acts C/O Tran engaged in --  denying

one meal, putting tape on a cell, and covering a cell window with a sheet -- appear rather minor. Generally, none of these events appears to amount to a serious enough condition to satisfy the objective prong for an Eighth Amendment claim.  The amended complaint also suggests that the tape and covered cell window, and/or their effect on Howell, might have been very limited in duration.  Howell was able to write a grievance about the situation the next day.  In his second amended complaint, Howell must allege facts suggesting that he was subjected to an objectively serious condition, and that C/O Tran knew of and disregarded a serious risk to Howell's mental health in doing the things he did to Howell on September 15, 2015.

Finally, Howell has named several persons higher up in the county jail's organizational structure without showing a basis for their liability under § 1983.  Howell alleges that correctional lieutenant Meyers is responsible for the supervision of staff and the welfare of inmates in the mental health program, and sheriff Smith is responsible for the Santa Clara County Department of Corrections' "overall operations" and the mental health of inmates.  Docket No. 8 at 4, 5.  Howell alleges that each defendant is sued in his or her individual and official capacity.  *Id.* at 5. There is no respondeat superior liability under § 1983, i.e. no liability under the theory that one is responsible for the actions or omissions of another, such as an employee.  *See Board of Cty. Comm'rs. of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139, 1144 (9th Cir. 2012).  Thus, a claim would not be stated against the director of the department of corrections or the head of the jail merely because that person was in charge, nor would an official capacity claim be stated merely because the county employed the alleged wrongdoers or ran the jail at which the alleged constitutional violations occurred.  If Howell wants to pursue the supervisor defendants, he must include allegations in his second amended complaint to support such a theory.  A supervisor may be liable under § 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  *See Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011).  If Howell has named these people in their official capacity in an effort to sue the municipality, he needs to make additional allegations in his second amended complaint to plead municipal liability.  Local governments, such as Santa Clara County, are "persons" subject

United States District Court
Northern District of California

1    to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort.

2    *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690 (1978).  To impose municipal liability

3    under § 1983 for a violation of constitutional rights, a plaintiff must show: "(1) that [the plaintiff]

4    possessed a constitutional right of which [he] was deprived; (2) that the municipality had a policy;

5    (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4)

6    that the policy is the moving force behind the constitutional violation."  *See Plumeau v. School*

7    *Dist. #40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (citations and internal quotation

8    marks omitted).  For municipal liability, a plaintiff must plead sufficient facts regarding the

9    specific nature of the alleged policy, custom or practice to allow the defendant to effectively

10   defend itself, and these facts must plausibly suggest that the plaintiff is entitled to relief.  *See AE v.*

11   *County of Tulare*, 666 F.3d 631, 636-37 (9th Cir. 2012).  It is not sufficient to merely allege that a

12   policy, custom or practice existed or that individual officers' wrongdoing conformed to a policy,

13   custom or practice.  *See id.* at 636-68.

14

15                                     **CONCLUSION**

16          Plaintiff's amended complaint is dismissed with leave to amend.  Plaintiff must file a

17   second amended complaint no later than **April 29, 2016**, and must include the caption and civil

18   case number used in this order and the words SECOND AMENDED COMPLAINT on the first

19   page. Plaintiff is cautioned that his second amended complaint must be a complete statement of

20   his claims, except that he does not need to allege any claim that has been dismissed without leave

21   to amend.  *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  Failure to

22   file a second amended complaint by the deadline will result in the dismissal of this action.

23          **IT IS SO ORDERED**.

24   Dated:  March 29, 2016

25   _____

26   SUSAN ILLSTON
     United States District Judge

27

28